DALE N. JOHNSON
MOLLY LAWRENCE
JACOB STILLWELL
SOPHIA E. AMBERSON
VAN NESS FELDMAN LLP
1191 SECOND AVENUE, SUITE 1800
SEATTLE, WA 98101
T: 206-623-9372
dnj@vnf.com; mol@vnf.com;
jstilwell@vnf.com; samberson@vnf.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| CANYON PARK BUSINESS CENTER OWNERS' ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>PETE BUTTIGIEG in his official capacity as Secretary of Transportation; UNITED STATES DEPARTMENT OF TRANSPORTATION; STEPHANIE POLLACK in her official capacity as the Deputy Administrator of the Federal Highway Administration; MELINDA ROBERSON in her official capacity as the Division Administrator of the Federal Highway Administration, Washington Division; THE FEDERAL HIGHWAY ADMINISTRATION; ROGER MILLAR in his official capacity as Secretary of Washington State Department of Transportation; and WASHINGTON DEPARTMENT OF TRANSPORTATION,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and the Administrative Procedure Act, 5 U.S.C. §§ 701–06 ("APA"). An actual controversy exists between the parties to this lawsuit under 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201–02 and 5 U.S.C. §§ 705–06.

2. The challenged agency actions of Defendants are subject to this Court's review pursuant to the APA, 5 U.S.C. § 702. The APA allows this Court to hold unlawful and set aside agency action that is arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law, 5 U.S.C. § 706(2)(A); that is in excess of the statutory jurisdiction, authority or limitation, 5 U.S.C. § 706(2)(C); and that is undertaken without observance of procedures required by law, 5 U.S.C. §706(2)(D).

3. CPBCOA challenges final agency actions as defined by the APA, 5 U.S.C. § 704.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this District.

5. The Seattle Division in the Western District of Washington is the proper forum for this lawsuit pursuant to Local Civ. R. 3(e) because the claims arose in King and Snohomish Counties, Washington.

## II. PARTIES

6. Canyon Park Business Center Owners' Association ("CPBCOA") realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

7. Plaintiff CPBCOA is a Washington State non-profit corporation located at 18912 North Creek Parkway Suite 209, Bothell, WA, 98011, comprised of owners of the properties located in the Canyon Park Business Center (the "Park") in Bothell, WA. The Park is an approximately 400-acre business and industrial park established in the 1980s. CPBCOA is suing on behalf of itself representing the interests of its members. Members of the CPBCOA and their






1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

tenants include, but are not limited to, biotech, technology, manufacturing, logistics, and service industries, as well as residential developers and owners.

8. The United States Department of Transportation ("USDOT"), the Federal Highway Administration ("FHWA"), and the Washington State Department of Transportation ("WSDOT") (collectively, "Defendants") jointly conducted environmental review of the Interstate 405 ("I-405"), State Route ("SR") 522 Vicinity to SR 527 Express Toll Lanes Improvement Project (the "Project") in Washington State. On information and belief, WSDOT served as the applicant for the Project. WSDOT and FHWA jointly prepared, reviewed, and approved the Environmental Assessment ("EA") and issued the Finding of No Significant Impact ("FONSI") for the Project.

9. Defendant USDOT is the executive department of the federal government responsible for approval of highway projects.

10. Defendant Pete Buttigieg is the United States Secretary of Transportation. He is sued in his official capacity only.

11. Defendant FHWA is a federal agency within the USDOT that supports state and local governments in the design, construction, and maintenance of the United States highway system and ensures that America's roads and highways are both safe and technologically sound. FHWA was the lead federal agency for the Project's environmental review process under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq*. On July 29, 2021, FHWA, through its Washington Division, and WSDOT issued a FONSI for the Project and published its NEPA approvals on August 2, 2021, in the Federal Register.

12. Defendant Stephanie Pollack is the Deputy Administrator of the FHWA. As of the date of this filing, the position of Administrator of the FHWA is vacant. She is sued in her official capacity only.

13. Defendant Melinda Roberson is the acting Division Administrator of the FHWA Washington Division, which is located at 711 S. Capitol Way, Suite 501 Olympia, WA, 98501. She is sued in her official capacity only.

Van Ness
Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

14. Defendant WSDOT is a Washington state agency that constructs, maintains, and regulates the use of transportation infrastructure in Washington state. WSDOT's primary administrative office is located at 310 Maple Park, Olympia, WA, 98501.

15. Defendant Roger Millar is the Secretary of the WSDOT. He is sued in his official capacity only.

16. The Project is a joint state-federal project for which WSDOT was integrally involved in the planning and created the environmental documents pursuant to NEPA.

17. The Project is a major federal action because the FHWA has approved construction and management activities (the Project) in a defined geographic area (in the City), and, on information and belief, has provided federal assistance for the Project.

18. WSDOT is a necessary party in this litigation.

19. State defendants can be subject to NEPA if: (1) there are state and federal projects that are sufficiently interrelated to constitute a single federal action for NEPA purposes; (2) a state defendant has entered into a partnership or joint venture with the federal government whereby the federal government provides goods, services, or financing; or (3) a proposed action cannot proceed without the prior approval by a federal agency. On information and belief, WSDOT satisfies these requirements, including but not limited to, receipt of federal funding for the Project.

20. FHWA and WSDOT have both conducted environmental review of the Project and jointly developed and published both the EA and FONSI.

21. The Project cannot proceed without FHWA's approval.

22. To the extent the Project constitutes a state project and a federal project, those projects are sufficiently interrelated to constitute a single federal action.

23. Defendants have harmed CPBCOA's interests in participating in a legally sound environmental review process that adequately considers the impacts of the Project. Defendants failed to take a "hard look" at the environmental impacts of approving the Project. Defendants relied on flawed and insufficient environmental analysis in violation of NEPA.

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

24. The CPBCOA has standing to bring its claims because it owns the private road network, stormwater detention facilities, and other common amenities within the Park. Specifically, CPBCOA owns 17th Avenue SE, along with the road network connecting to SR 527, including the 220th Street SE corridor and its intersections at SR 527, 17th Avenue SE, 20th Ave SE, 23rd Avenue SE, and 26th Place SE/26th Avenue.

25. CPBCOA and its members heavily rely on the roadways affected by the Project. These roadways provide the only means of ingress and egress from the Park properties to the public road network. Defendants' decision to issue a FONSI and approve the Project has harmed and continues to harm CPBCOA and its members in numerous ways. The Project will result in a significant increase in the number of vehicles traveling in the Park, adversely affect owners, tenants and visitors' access to the Park, and overall, dramatically increase the traffic on certain roadways within the Park through congestion and queueing.

26. CPBCOA has suffered and is suffering procedural and informational injuries due to Defendants' failure to fulfill their obligations under NEPA. These injuries are actual, concrete injuries suffered by CPBCOA and its members. These injuries are caused by Defendants' alleged violations of law. The relief sought herein would redress CPBCOA's injuries.

## III. FACTS

27. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

28. Defendants conducted federal environmental review of the joint development of the I-405, SR 522 Vicinity to SR 527 Express Toll Lanes Improvement Project in Washington, State. The Project proposes creating a dual express toll lane ("ETL") system from MP 21.79 to MP 22.30 and widening I-405 to add one ETL in each direction between MP 22.30 and MP 26.30. Just south of the SR 527 (sometimes referred to as "Bothell Everett Highway") interchange at 17th Avenue SE in the City of Bothell ("City"), the Project would construct direct access ramps ("DARs") to and from the ETL onto 17th Ave SE in the Park. As a result of the Project's design,

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

vehicles connecting between SR 527 and I-405 via the DAR will be directed through the Park on 17th Avenue SE and 220th Street SE as an alternative route to the I-405/SR 527 interchange.

29. According to the EA, the purpose of the Project is to: (1) provide a reliable trip for I-405 users using the ETLs; (2) provide new direct access for users of the existing ETLs, including bus rapid transit; (3) increase vehicle capacity and person throughput; and (4) improve reliability for transit riders.

30. On July 2, 2020, Defendants published the EA for the Project, which analyzed existing conditions and only a "Build" versus "No Build" scenario for the Project beginning in 2025 with a horizon year of 2045. The EA's SR 527 interchange analysis concluded that the DAR and the SR 527 interchange areas would experience higher vehicle volumes with the Build scenario as compared to the No Build scenario, and specifically concluded that many intersections within the Park would experience degraded Levels of Service ("LOS").

31. LOS refers to the degree of congestion measured in average delay per vehicle. LOS A is the best operating condition, with motorists experiencing minimal delay. LOS F is the worst condition, with motorists experiencing delays at traffic signals of more than one minute.

32. The traffic modeling used by Defendants in the EA was fundamentally flawed. Defendants underestimated traffic impacts in and to the Park. Defendants misidentified Project related traffic impacts and failed to adequately analyze or identify appropriate mitigation for those impacts. Defendants' failure to identify, analyze or mitigate severe traffic impacts was a critical error in Defendants' environmental analysis.

33. The EA's roadway and intersection analysis concluded that several intersections within the Park are projected to operate at LOS E or F under both the Build and No Build scenarios both in 2025 and 2045. With the added severity of unanalyzed and unmitigated Project related traffic impacts, these intersections will be even further degraded to a "worse" LOS F than previously identified and the roadways within the Park will experience substantial queuing, blocking abutting properties' access to the road network and backing up traffic to the ETL.

Van Ness
Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

34. Defendants applied an inflated regional aggregate growth rate as a background assumption when measuring growth within the Park under the No Build scenario in order to minimize the relative effect of the Project on traffic within the Park.

35. Defendants failed to consider the significant increase in density allowed and planned for in the Park by the City in its Canyon Park Subarea Plan, adopted on January 1, 2021. As a result, the volumes utilized to forecast future conditions underestimated impacts on the LOS and queuing levels in the Park.

36. The additional traffic and corresponding congestion generated by vehicles utilizing the DAR (as an alternative to the SR 527 interchange) into and out of the Park will block traffic in several exiting driveways along 17th Avenue SE. Such impacts were not analyzed in the EA.

37. Defendants relied on traffic models that do not adequately capture and report the Project's traffic impacts, particularly on roadways within the Park. Defendants' models incorrectly found that traffic impacts generally operate at acceptable levels of service and/or would improve under the Build scenario. In some cases, the Defendants' models failed to count all vehicles that would access the roadway and consequently underreported congestion levels. These errors resulted in a failure to identify significant adverse environmental impacts, failure to properly analyze those impacts, and failure to identify adequate mitigation for those impacts.

38. The Project includes additional turn lanes along 17th Avenue SE and the 220th Street SE corridor. These improvements are insufficient to accommodate the increased traffic created by the Project.

39. Additionally, the EA projects that the 17th Avenue SE and 220th Street SE corridors will be operating above capacity with the Project, causing a significant diversion of cut through trips throughout the Park.

40. Section 5.1.1 of the FONSI references the limited measures WSDOT has proposed to avoid, minimize, or mitigate transportation effects of the Project within the Park. The traffic measures in the Park required as part of the FONSI are limited to installing wayfinding signage

Van Ness
Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

directing traffic from the DAR to SR 527. The FONSI also refers to intersection improvements at 20th Ave SE and 220th Street SE but asserts that these improvements are not necessary to mitigate Project effects.

41. The FONSI for the Project relied upon erroneous traffic analysis that resulted in underestimation of traffic impacts in the Park and/or failure to identify traffic impacts. As a result, the limited mitigation measures identified in the FONSI are inadequate to address the Project's significant adverse traffic impacts in the Park.

42. CPBCOA raised concerns about inadequate traffic analysis for the Project in comment letters and other communications pertaining to both the EA and FONSI. The Defendants failed to adequately address these concerns.

43. The Project will have significant adverse impacts on transportation and traffic operations in the area around the I-405 and SR 527 interchange, including in the Park, its road network, and its operations.

44. Defendants' decision to issue a FONSI and approve the Project has harmed and continues to harm CPBCOA and its members in numerous ways. The Project will result in a significant increase in the number of vehicles in the Park, adversely affect property owners, tenants and visitors/customers' access to the Park, and overall, dramatically increase the traffic in the Park, including increased congestion and vehicle queueing.

45. Defendants have harmed CPBCOA's interests in participating in a legally sound environmental review process that adequately considers the Project's impacts. Defendants failed to take the requisite "hard look" at the Project's environmental impacts and relied on flawed and insufficient environmental analysis in violation of NEPA.

## IV. FIRST CAUSE OF ACTION: Violation of NEPA, 42 U.S.C. §§ 4321 *et seq*. and APA, 5 U.S.C. §§ 701–06 (Against All Defendants) - Inadequate Analysis

46. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

47. NEPA directs all federal agencies to assess the environmental impacts of proposed federal actions that significantly affect the quality of the human environment. 42 U.S.C. § 4332(2)(C). NEPA's disclosure goals are two-fold: (1) to ensure that the agency has carefully and fully contemplated the environmental effects of its action; and (2) to ensure that the public is informed and involved in decisions that affect the quality of the human environment. 40 C.F.R. § 1500.1.

48. The Council on Environmental Quality ("CEQ") promulgated uniform regulations to implement NEPA that are binding on all federal agencies. 40 C.F.R. §§ 1500, *et seq*.

49. NEPA requires federal agencies to prepare an EIS for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

50. When it is not clear whether an action requires the preparation of an EIS, CEQ's regulations direct agencies to determine whether the action is categorically excluded or prepare an EA to determine whether an EIS is required. 40 C.F.R. § 1501.5(a). An EA is a "concise public document," 40 CFR § 1508.1, that must "briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 C.F.R. § 1501.5(c).

51. If an agency determines that an action may have a significant environmental impact, the agency must prepare an EIS. 40 C.F.R. § 1501.3. If the agency determines that the impacts will not be significant, the agency must prepare a FONSI. 40 C.F.R. § 1501.6.

52. If the FHWA utilizes documents prepared by a state department of transportation, the FHWA must furnish guidance, participate in the preparation, and independently evaluate the document. 23 C.F.R. § 771.109(c)(5).

53. The APA governs the procedural requirements for agency decision making and provides the standard of review for a federal agency's compliance with NEPA

54. The APA provides a right to judicial review of final agency actions. 5 U.S.C. § 702.

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

55. The APA mandates that a court hold unlawful and set aside such actions, findings, and conclusions when they are: (a) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A); (b) in excess of statutory jurisdiction, authority or limitation, 5 U.S.C. § 706(2)(C); or (c) without observance of procedures required by law, 5 U.S.C. § 706(2)(D).

56. The Project, its federal approval, and associated funding constitute a major federal action.

57. The issuance of a FONSI constitutes final agency action.

58. In the EA, Defendants utilized flawed assumptions and inadequate transportation modeling and analysis, including modeling errors pertaining to traffic impacts within the Park. As a result, Defendants did not adequately identify, disclose, and study the effects and impacts, including cumulative impacts, of the Project on the natural and human environment.

59. Defendants relied on the EA in issuing the FONSI.

60. These flawed assumptions and inadequate transportation analysis, as detailed in the EA, resulted in the Defendants wrongly issuing a FONSI.

61. Defendants' failure to adequately identify, disclose, and study the effects and impacts of the Project violates NEPA, is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with the law within the meaning of the APA, 5 U.S.C. § 706(2).

## V. SECOND CAUSE OF ACTION: Violation of NEPA, 42 U.S.C. §§ 4321 *et seq*. and APA, 5 U.S.C. §§ 701–06 (Against All Defendants) - Failure Mitigate Impacts

62. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

63. A FONSI is required to state the authority for any mitigation and appropriate monitoring or enforcement for such mitigation. 40 C.F.R. § 1501.6(c). If an agency issues a FONSI based on mitigation, it shall state "any enforceable mitigation requirements or commitments that will be undertaken to avoid significant impacts." *Id.*

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

64. Defendants relied on inadequate and flawed methodology and assumptions pertaining to the Project's traffic impacts when developing the EA. As a result, the EA failed to adequately identify impacts of the Project.

65. Because the EA did not identify the impacts, the proposed mitigation measures in the EA and FONSI are inappropriate and ineffective.

66. Inadequate mitigation measures were the basis for the FONSI. The FONSI is, therefore, flawed and inadequate.

67. Defendants' reliance on inadequate mitigation measures in the EA as the basis for a FONSI is a violation of NEPA, is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with the law within the meaning of the APA, 5 U.S.C. § 706(2).

## VI. THIRD CAUSE OF ACTION: VIOLATION OF NEPA, 42 U.S.C. §§ 4321 *et seq*. and APA, 5 U.S.C. §§ 701–06 (Against All Defendants) - Inadequate Alternatives Analysis/Impermissibly Narrow Purpose and Need

68. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

69. A statement of purpose and need must "briefly specify the underlying purpose and need to which the agency is responding in proposing the alternatives included in the proposed action" 40 C.F.R. § 1502.13.

70. The statement of purpose and need sets the parameters for the alternatives that must be considered in the environmental review.

71. Whether the agency prepares an EA or an EIS, or both, NEPA requires federal agencies to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E).

72. The only alternatives analyzed in the EA were a Build and No Build scenarios.

73. The Defendants narrowly defined the purpose and need to limit the range of alternatives evaluated in the EA.

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

74. In any case, the EA failed to evaluate a reasonable range of alternatives.

75. Defendants' decision to narrowly tailor the purpose and need and failure to adequately consider a reasonable range of alternatives are violations of NEPA, are arbitrary and capricious, are abuses of discretion and otherwise not in accordance with the law within the meaning of the APA, 5 U.S.C. § 706(2).

## VII. FOURTH CAUSE OF ACTION Violation of NEPA, 42 U.S.C. §§ 4321 *et seq*. and APA, 5 U.S.C. §§ 701–06 (Against All Defendants) - Failure to Prepare an Environmental Impact Statement

76. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

77. An EIS is a "detailed statement" that must describe: (1) the "environmental impact of the proposed action;" (2) any "adverse environmental effects which cannot be avoided should the proposal be implemented;" (3) alternatives to the proposed action; (4) "the relationship between local short term uses of man's environment and the maintenance and enhancement of long-term productivity;" and (5) any "irreversible or irretrievable commitment of resources which would be involved in the proposed action should it be implemented." 42 U.S.C. § 4332(2)(C)(i)–(v).

78. If there are substantial questions whether a proposed action may significantly impact the environment, an EIS must be prepared.

79. Defendants relied on inadequate and flawed methodology and assumptions pertaining to the Project's traffic impacts when developing the EA. As a result, the EA failed to adequately identify impacts of the Project.

80. Because the EA did not identify the impacts, the mitigation measures identified in the EA FONSI are inadequate to offset the adverse effects of the Project.

81. These inadequate mitigation measures were the basis for the FONSI. The FONSI is, therefore, flawed and inadequate.

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

82. Had Defendants conducted an adequate analysis, including, using appropriate methodologies and assumptions, Defendants would have concluded that the Project may significantly impact the human environment or that there are substantial questions about whether the Project may significantly impact the environment. To avoid preparing an EIS, Defendants needed to provide sufficient mitigation to address those impacts. Accordingly, Defendants were required to issue an EIS and/or a EA/FONSI with adequate mitigation measures.

83. Defendants' decision to forgo preparation of an EIS or a supplemental EA/FONSI with appropriate mitigation measures is a violation of NEPA, is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law within the meaning of the APA, 5 U.S.C. § 706(2).

## VIII. FIFTH CAUSE OF ACTION: Permanent Injunction APA, 5 U.S.C. §§ 701–06 (Against All Defendants)

84. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

85. Because the Project will impact CPBCOA's property rights, interests, and access and use of the roads, CPBCOA is entitled to an injunction immediately and forever enjoining Defendants from taking any further action on the Project until such time as Defendants have complied with its duties under NEPA and produced lawful NEPA documents.

## IX. SIXTH CAUSE OF ACTION: Declaratory Judgment that Defendants Violated NEPA, 42 U.S.C. §§ 4321 *et seq*., 28 U.S.C. § 2201 and APA, 5 U.S.C. §§ 701–06 (Against All Defendants)

86. CPBCOA realleges as if fully set forth here, each and every allegation contained in the preceding paragraphs.

87. Pursuant to 28 U.S.C. § 2201(a), in a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interest party seeking such declaration, whether or not further relief is or could be sought.

1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

88. An actual controversy of sufficient immediacy exists between the Parties as to whether Defendants complied with their statutory obligations under NEPA. This Court has the authority to resolve this case or controversy pursuant to 28 U.S.C. § 2201(a).

## X. PRAYER FOR RELIEF

WHEREFORE, CPBCOA requests cumulatively, and in the alternative that the Court grant the following relief:

1. Find and declare that Defendants' approval of the FONSI violates NEPA;

2. Order Defendants to comply with its obligations under NEPA and prepare an EIS that meets the statutory and regulatory requirements of NEPA and/or issue a revised FONSI, based on adequate alternatives and analysis, including mitigation measures sufficient to offset the significant transportation impacts of the Project;

3. Enjoin Defendants from taking any further action on the Project until such time as Defendants have complied with its duties under NEPA and produced lawful NEPA documents as ordered by this Court;

4. Award attorney fees and costs as provided under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

5. Grant CPBCOA such further and additional relief as the Court may deem just and proper.

//

//

//

//

//

//

//

//

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372

DATED: December 20, 2021.

Respectfully submitted,

VAN NESS FELDMAN LLP

*/s/ Dale N. Johnson*
Dale N. Johnson, WSBA No. 26629
Molly Lawrence, WSBA No. 28236
Jacob Stillwell, WSBA No. 48407
Sophia E. Amberson, WSBA No. 52528

1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
Tel: (206) 623-9372
Fax: (206) 623-4986
E-mail:dnj@vnf.com; mol@vnf.com; jstillwell@vnf.com; samberson@vnf.com

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6
771671

Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372