UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CANYON PARK BUSINESS CENTER OWNERS' ASSOCIATION,<br><br>                Plaintiff,<br><br>     v.<br><br>PETE BUTTIGIEG, et al.,<br><br>                Defendants. | C21-1694 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a Motion to Dismiss, docket no. 13, filed by Defendants Pete Buttigieg, the United States Department of Transportation, Stephanie Pollack, Melinda Roberson, and the Federal Highway Administration ("FHWA") (collectively "Federal Defendants"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiff Canyon Park Business Center Owners' Association ("Canyon Park") is a Washington State non-profit corporation located in Bothell, Washington. Compl. at ¶ 7 (docket no. 1). Canyon Park is comprised of the owners of the properties located in the Canyon Park Business Center ("Business Center"), which is an approximately 400-acre business and industrial park. Id.

ORDER - 1

1    This lawsuit challenges the Interstate-405 ("I-405")/State Route ("SR") 522 Vicinity to SR 527 Express Toll Lanes Improvement Project (the "Project").  See id. at ¶ 23.  According to Canyon Park, the Project "proposes creating a dual express toll lane ("ETL") system from MP 21.79 to MP 22.30 and widening I-405 to add one ETL in each direction."  Id. at ¶ 28.  Additionally, just south of SR 527, the Project would construct direct access ramps ("DARs") to and from the ELT onto 17th Ave SE in the Business Center.  Id.  Plaintiff asserts that the Project's design would direct vehicles connecting between SR 527 and I-405 via the DAR through the Business Center on 17th Avenue SE and 220th Street SE as an alternative route to the I-405/SR 527 interchange.  Id.

On July 2, 2020,  Defendants FHWA and the Washington State Department of Transportation ("WSDOT") published the Environmental Assessment ("EA") for the Project.  Id. at ¶¶ 20 & 30.  On July 29, 2021, FHWA and WSDOT issued a Finding of No Significant Impact ("FONSI") for the Project and published the National Environmental Policy Act ("NEPA") approvals on August 2, 2021.  Id. at ¶ 11.

In December 2021, Canyon Park filed the complaint on behalf of itself and its members alleging that the FONSI was based upon a deficient EA and was an arbitrary and capricious final agency action within the meaning of the Administrative Procedure Act ("APA").  Id. at ¶¶ 61, 67, 75, & 83.  Specifically, Canyon Park contends that the EA failed to correctly analyze the impact the Project would have regarding increased traffic in the vicinity of the Business Center.  Id. at ¶¶ 32–41.  Federal Defendants now move to dismiss the complaint on the basis that Canyon Park has not adequately pleaded

ORDER - 2

prudential and associational standing to assert NEPA claims both on behalf of itself and on behalf of its members.

**Discussion**

I. **Legal Standard**

In their Rule 12(b)(1) motion, defendants present a facial, rather than a factual, jurisdictional challenge. A party may properly raise the issue of standing in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack asserts that the allegations of the complaint are insufficient on their face to invoke federal jurisdiction, while a factual challenge disputes the truth of the allegations in the complaint that would otherwise support subject-matter jurisdiction. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). With respect to a facial challenge under Rule 12(b)(1), a plaintiff is entitled to the same safeguards that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). The factual allegations of the complaint are presumed to be true, and the pleading is construed in the light most favorable to the non-moving party. See Does v. Univ. of Wash., No. C16-1212, 2016 WL 5792693, at *3–4 (W.D. Wash. Oct. 4, 2016) (citing Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007)).

II. **Whether Canyon Park Has Standing in its Own Right**

Federal Defendants challenge whether Canyon Park has met the prudential requirements for standing and do not argue that they lack Article III standing. Mot. to Dismiss at 5 (docket no. 13). Canyon Park asserts four causes of action based on NEPA.

ORDER - 3

1  NEPA does not create a private right of action and therefore Canyon Park relies on the

2  APA to bring this lawsuit.  See Town of Stratford, Conn. v. Fed. Aviation Admin., 285

3  F.3d 84, 88 (D.C. Cir. 2002); Compl. at ¶ 2.  The Supreme Court has interpreted the APA

4  "to impose a prudential standing requirement in addition to the requirement, imposed by

5  Article III of the Constitution, that a plaintiff have suffered a sufficient injury in fact."

6  Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co., 522 U.S. 479, 488 (1998).  "For

7  a plaintiff to have prudential standing under the APA, 'the interest sought to be protected

8  by the complainant must be arguably within the zone of interests to be protected or

9  regulated by the statute in question.'"  Id. (quoting Ass'n of Data Processing Serv. Orgs.,

10 Inc. v. Camp, 397 U.S. 150, 153 (1970)).  The zone of interests test "is not meant to be

11 especially demanding."  Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987).

12      When Congress enacted NEPA, it recognized "the profound impact of man's

13 activity on the interrelations of all components of the natural environment" and "the

14 critical importance of restoring and maintaining environmental quality to the overall

15 welfare and development of man."  42 U.S.C. § 4331.  Congress stated four purposes for

16 enacting NEPA:

> The purposes of this chapter are:  To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality.

21 42 U.S.C. § 4321.  Accordingly, Congress declared a continuing policy "to use all

22 practicable means and measures . . . to create and maintain conditions under which man

23

ORDER - 4

and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans." 42 U.S.C. § 4331.

Given this purpose, "NEPA does not require that an agency take into account every conceivable impact of its actions, including impacts on citizens' subjective experiences." Bicycle Trails Council of Marin v. Babbitt, 82 F.3d 1445, 1466 (9th Cir. 1996). Instead, NEPA "requires agencies to take into account environmental impacts on the physical 'world around us.'" Id. Additionally, interests that NEPA considers to fall under the umbrella of environmental protection include ensuring "safe, healthful, productive, and esthetically and culturally pleasing surroundings," "attain[ing] the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences," and "achiev[ing] a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities." 42 U.S.C. § 4331(b); see also RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp., 47 F. Supp. 3d 1353, 1362 (M.D. Fla. 2014). Ultimately, for purposes of prudential standing, "[t]he zone of interests NEPA protects is environmental, and purely economic interests do not fall within NEPA's zone of interests." Our Money Our Transit v. Fed. Transit Admin., No. C13-1004, 2014 WL 3543535, at *3 (W.D. Wash. July 16, 2014) (Our Money) (citing Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 940 (9th Cir. 2005)).

Federal Defendants argue that Canyon Park lacks prudential standing because the complaint "is devoid of any allegation either that it has any environmental mission that will be transgressed or that it will suffer any injury of an environmental nature because of

ORDER - 5

1   Federal Defendants' alleged violation of NEPA." Mot. to Dismiss at 6.  Specifically,

2   Federal Defendants assert that Canyon Park's "allegations of injury from increased traffic

3   and traffic congestion in and around the [Business Park]" do not qualify as an injury to

4   the environment.[1]  Id. at 7.

5   　　In the complaint, Canyon Park focuses heavily on whether the Project will

6   increase traffic within the Business Center.  Specifically, Canyon Park asserts that "[t]he

7   Project will result in a significant increase in the number of vehicles traveling in the

8   [Business Center], adversely affect owners, tenants and visitors' access to the Park, and

9   overall, dramatically increase the traffic on certain roadways within the [Business Center]

10  through congestion and queueing." Compl. at ¶ 25.  According to Canyon Park, the

11  "failure to identify, analyze or mitigate severe traffic impacts was a critical error in

12  Defendants' environmental analysis." Id. at ¶ 32.

13  　　The parties essentially dispute whether allegations of increased traffic and vehicle

14  congestion are sufficient to allege an environmental injury under NEPA.  The

15  environmental impacts within "NEPA's zone of interests can be said to include the

16  environment, quality of life, land use and resource management, economic growth, and

17  public health and safety." RB Jai Alai, LLC, 47 F. Supp. 3d at 1362–63.  Traffic and

18  congestion has been considered a "quality of life" injury within NEPA's zone of interests.

---

[1] Federal Defendants also argue that Canyon Park's "allegation of having suffered a 'procedural and informational injury,' plainly does not suffice" for purposes of prudential standing. Mot. to Dismiss at 8. In its Response, Canyon Park does not argue that its allegations of procedural and informational injury are sufficient on their own to meet the prudential standing requirements.  Rather, it asserts that it has standing to assert a procedural injury because its allegations of harm caused by increased traffic and vehicle congestion fall within NEPA's zone of interests.  Resp. at 8 n.3 (docket no. 15).

1  Id. at 1363 ("Plaintiffs allege quality of life injuries: . . . increased traffic and
2  congestion.").  Because increased traffic can affect other issues such as air quality and
3  noise, courts have held that it can constitute an environmental injury and is not
4  necessarily purely economic.  See Latin Ams. for Soc. and Econ. Dev. v. Adm'r of Fed.
5  Highway Admin., 858 F. Supp. 2d 839, 850 (E.D. Mich. 2012)[2]; Sensible Traffic Alts.
6  and Res. Ltd. v. Fed. Transit Admin. of U.S. Dep't of Transp., 307 F. Supp. 2d 1149,
7  1163 (D. Haw. 2004) (stating that the governmental examination of the environmental
8  impact of a transit system included examining the impact on traffic).

9       While increased traffic and congestion can be an environmental impact within
10 NEPA's zone of interests, courts do not assume environmental injuries based on
11 allegations of only increased traffic and congestion.  See Our Money, 2014 WL 3543535,
12 at *8 ("[A]lthough Plaintiffs argue that the EA fails to fully account for impacts to traffic,
13 Plaintiffs do not set forth any possible *environmental* impacts that were potentially
14 overlooked.")[3]; Fortress Bible Church v. Feiner, 694 F.3d 208, 217 (2d Cir. 2012)
15 (stating that "increased car traffic potentially raises environmental concerns due to
16 increased emissions").  Here, the complaint only vaguely addresses the environmental

---

[2] In their Reply, Federal Defendants argue that Latin Americans for Social and Economic Development does not hold that a party may adequately allege an environmental injury within NEPA's zone of interests without making any allegations of specific environmental impacts in the complaint.  Reply at 6 (docket no. 16).  The Court, however, cites the case only as authority that increased traffic may be considered an environmental injury under NEPA.

[3] While, in Our Money, the Court was resolving a motion for summary judgment, the proposition that a plaintiff asserting a NEPA violation must at least set forth an environment-related injury applies broadly to complaints based on NEPA and is relevant to this motion to dismiss.

ORDER - 7

1 impact of increased traffic by asserting that defendants' alleged errors in evaluating the

2 Project's effects on traffic "resulted in a failure to identify significant adverse

3 environmental impacts." Compl. at ¶ 37.  Canyon Park fails to make any allegations as to

4 what those impacts would be, why they would be significant, or how defendants have

5 failed to investigate them.  See Coliseum Square Ass'n, Inc. v. Jackson, 465 F.3d 215,

6 237 (5th Cir. 2006) ("Moreover, while plaintiffs allege a long list [of] negative effects on

7 health, safety, noise, pollution, vibration, and historic properties, they offer us no

8 evidence as to what those effects would be, why they would be significant, or how

9 [defendant] has failed to investigate them.").[4]

10   In its Response, Canyon Park argues that the "reasonable inference" from its

11 allegation that the Project will result in "significant traffic increases and congestion" is

12 that Canyon Park's "interests in an aesthetically pleasing, safe, and healthful environment

13 will also be impacted." Resp. at 5 (docket no. 15).  This, however, is not something the

14 Court can reasonably infer from the current allegations, especially where the only

15 specific allegations of harm alleged in the complaint seem economic in nature.  See

16 Compl. at ¶ 25 (stating that increased traffic will adversely affect access to the Business

17 Center).  Courts "need not stretch allegations beyond their sensible and reasonable

18 implications." Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 n.2 (8th Cir. 2019).

19 Although Canyon Park asserts environmental impact in its Response, the Court may not

---

[4] Although on a motion to dismiss Canyon Park need not come forth with evidence of the environmental impacts of the Project, it must make specific allegations of environmental injury to establish that it falls within NEPA's zone of interests.

ORDER - 8

1  consider those facts in determining whether to grant this motion to dismiss. <u>Savage v.
2  Glendale Union High School, Dist. No. 205, Maricopa County</u>, 343 F.3d 1036, 1039 n.2
3  (9th Cir. 2003) (stating that in Rule 12(b)(1) facial challenges to subject matter
4  jurisdiction courts must confine the inquiry to allegations in the complaint).  As Canyon
5  Park fails to allege any specific environmental impacts that the increased traffic and
6  congestion could cause, it has not alleged an injury within NEPA's zone of interests.

      Federal Defendants also argue that Canyon Park cannot assert quality of life
injuries to fall within NEPA's zone of interests because, as a business entity, it does not
have a quality of life.  Reply at 4–5.  Where a corporation's purpose does not at least
concern NEPA's environmental purposes, then the corporation may not be able to raise a
NEPA claim based on injuries to quality of life or the environment.  For instance, where
mining corporations' access to a road would ultimately degrade the environment, a
district court ruled that its injuries did not fall within NEPA's zone of interests and stated
that "[i]t is hard to see how mining and resource development corporations can
'appreciate environmental values' or 'derive intrinsic enjoyment from their use of the
roads.'" <u>Am. Indep. Mines and Mins. Co. v. U.S. Dep't of Agric.</u>, 733 F. Supp. 2d 1241,
1252 (D. Idaho 2010).  But where a business entity's purpose explicitly or implicitly
concerns NEPA's purpose, such as encouraging enjoyable harmony between man and the
environment, then the Ninth Circuit has held a business entity's injury based on aesthetics
fell within NEPA's zone of interests.  <u>See</u> <u>Presidio Golf Club v. Nat'l Park Serv.</u>, 155
F.3d 1153, 1158–59 (9th Cir. 1998) ("[T]he Club's interests in maintaining its historic

Clubhouse and the surrounding environment in a fashion suitable for the game of golf, are arguably within the zone of interests to be protected by NEPA.").[5]

Thus, a corporation may assert injuries to quality of life to fall within NEPA's zone of interests if its purpose is also related to the interests protected by NEPA. Here, however, the complaint only states that Canyon Park "owns the private road network, stormwater detention facilities, and other common amenities within the [Business Center]." Compl. at ¶ 24. The complaint does not contain any allegations regarding what Canyon Park's purpose is or how its purpose is connected to its alleged injuries. Accordingly, the Court cannot determine from the complaint, as currently written, whether Canyon Park may raise injuries to quality of life on its own behalf for purposes of establishing prudential standing in this case. For these reasons, the allegations in the complaint do not establish that Canyon Park has prudential standing to bring its claims on its own behalf.

**III.    Whether Canyon Park May Assert the Interests of its Members**

Federal Defendants also contend that the complaint fails to establish that Canyon Park has associational standing to assert the interests of its members. The Supreme Court has established a three-part test for determining whether associational standing exists:

> [A]n association has standing to bring suit on behalf of its members when:
> (a) its members would otherwise have standing to sue in their own right;
> (b) the interests it seeks to protect are germane to the organization's purpose;

---

[5] Although Federal Defendants argue in their Reply that RB Jai Alai, LLC, does not hold that a business entity may assert quality of life injuries to establish standing for itself, the Ninth Circuit has permitted business entities to do so when the asserted environmental injury aligned with the business entity's purpose. Reply at 5; see Presidio Golf Club v. Nat'l Park Serv., 155 F.3d at 1158–59.

ORDER - 10

and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). The party asserting federal jurisdiction has the burden of establishing the standing elements. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

The complaint fails to establish that Canyon Park meets the first two elements for associational standing. To satisfy the first element, a plaintiff "must show that a member suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision." Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp., 713 F.3d 1187, 1194 (9th Cir. 2013). Typically, this element requires "specific allegations establishing that at least one *identified member* had suffered or would suffer harm." Id. (quoting Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009)). However, "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury," the Ninth Circuit has suggested that an organization need not identify the member or members injured by name. Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041 (9th Cir. 2015).

The complaint alleges that "[m]embers of [Canyon Park] and their tenants include, but are not limited to, biotech, technology, manufacturing, logistics, and service industries, as well as residential developers and owners," and that Canyon Park's members "heavily rely on the roadways affected by the Project" and will be harmed by

ORDER - 11

1  an increase in traffic at the Business Center.  Compl. at ¶¶ 7 & 25.  The complaint does
2  not identify any specific member affected by the Project.  Since it is not "relatively clear"
3  that members will be adversely affected by the Project, Canyon Park's complaint fails to
4  demonstrate that the members would have standing to sue in their own right.
5        Furthermore, regarding prudential standing, Canyon Park asserts in its Response
6  that "its members clearly have prudential standing as they share the quality-of-life
7  interests alleged by [Canyon Park]."  Resp. at 12.  The Court, however, has determined
8  that Canyon Park has not adequately alleged environmental injuries within NEPA's zone
9  of interests.  Thus, Canyon Park has failed to establish that its members have prudential
10 standing and have suffered injuries within NEPA's zone of interests for the same reasons
11 Canyon Park itself failed to do so.  Accordingly, the complaint fails to establish that
12 Canyon Park meets the first element for associational standing.
13       Turning to the second element, Canyon Park also fails to adequately allege that the
14 interests it seeks to protect are germane to the organization's purpose.  In its Response,
15 Canyon Park argues that "concerns about congestion, noise, pollution, access, aesthetics,
16 and safety that are directly linked to traffic impacts resulting from the Project are
17 germane to its purpose."  Resp. at 14.  The complaint, however, does not state what
18 Canyon Park's purpose is and says only that "it owns the private road network,
19 stormwater detention facilities, and other common amenities" within the Business Center.
20 Compl. at ¶ 24.  That Canyon Park has environmental concerns germane to its purpose
21 cannot be reasonably inferred from the complaint.  See Glick, 944 F.3d at 717 n.2.  Thus,
22 Canyon Park essentially asks the Court to assume things from the complaint that were not
23

alleged based on arguments made in its Response, which the Court may not do.  See Savage, 343 F.3d at 1039 n.2.  The claims alleged in the complaint by Canyon Park on behalf of its members are DISMISSED without prejudice and with leave to amend.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Motion to Dismiss, docket no. 13, is GRANTED and the complaint is DISMISSED without prejudice and with leave to amend.  The Court concludes that the complaint fails to establish that Canyon Park has standing to bring its claims both on behalf of itself and on behalf of its members;

(2) Any amended complaint must be filed within thirty (30) days of the date of this Order; and

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 28th day of June, 2022.

Thomas S. Zilly
United States District Judge

ORDER - 13